IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSIE TAYLOR, JENNIFER | § | |
| NGUYEN, and ELIZABETH COOPER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. NO. 1:10-cv-650 |
| | § | |
| SETON HEALTHCARE d/b/a/ SETON | § | |
| MEDICAL CENTER WILLIAMSON | § | |
| and JOHN BUTLER. | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs JOSIE TAYLOR, JENNIFER NGUYEN, and ELIZABETH COOPER and complain of Defendants SETON HEALTHCARE d/b/a/ SETON MEDICAL CENTER WILLIAMSON (hereinafter referred to as "Seton") and JOHN BUTLER and for cause of action would show the Court as follows:

## INTRODUCTION

1.     This action seeks damages, attorneys' fees, expert fees, taxable costs of the court, pre-judgment and post-judgment interest as a result of civilly wrongful conduct in violation of the laws of the United States and the State of Texas, including Title VII of the Civil Rights Act of 1964, as amended, and the Texas Commission on Human Rights Act, as amended.

## PARTIES

2.     Plaintiff JOSIE TAYLOR is a resident of Williamson County, Texas.

3.     Plaintiff JENNIFER NGUYEN is a resident of Williamson County, Texas.

4.     Plaintiff ELIZABETH COOPER is a resident of Williamson County, Texas.

5.     Defendant SETON HEALTHCARE is a corporation which can be served with Citation through its Registered Agent, Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.     Defendant JOHN BUTLER is an individual whose address is currently unknown to Plaintiffs but who can be served with Citation after his address is obtained through discovery.

## JURISDICTION AND VENUE

7.     Jurisdiction is conferred on this Court by Title 28 U.S.C. §1331.

8.     This action lies in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiffs' claims occurred substantially in Williamson County, Texas.

## CONDITIONS PRECEDENT

9.     All conditions precedent have been performed or have occurred.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

**Josie Taylor**

10.     Plaintiff Josie Taylor was hired by the Seton in March 2008 as a Clinical Assistant II.  Ms. Taylor was hired to work in the telemetry room, monitoring patents' cardiac monitors.

11.     From the first day that Ms. Taylor worked at Seton, Defendant John Butler, a Registered Nurse who worked on the same floor as Ms. Taylor, began behaving toward her in a manner that made her uncomfortable.  Mr. Butler touched Ms. Taylor, attempted to rub her shoulders, grabbed Ms. Taylor's hair, and gave her hugs.  This physical contact was unwelcome. Mr. Butler engaged in this behavior on a daily basis, and nearly every time he saw Ms. Taylor.

12.     From the beginning of this behavior, Ms. Taylor told Mr. Butler repeatedly to stop,

but he would not.

13.     Mr. Butler also said sexually-oriented things to Ms. Taylor that made her extremely uncomfortable.  Some of his comments were:  "I should beat you with a wet noodle.  Oh no but you would like that" and "I heard all of the films they make in endoscopy are x-rated."  Mr. Butler also asked Ms. Taylor if she had been skinny dipping in the lake next to the hospital.

14.     In June 2008, Ms. Taylor made a report to Seton regarding Mr. Butler's conduct.  The final incident that led her to make the report was Mr. Butler reaching up under Ms. Taylor's shirt and pulling her undershirt down.  After that incident, Ms. Taylor went to Tom Alexander, who was the House Supervisor, and to her direct supervisor, Hue Nguyen.  She told both of them about Mr. Butler's inappropriate actions toward her, and asked them to ensure that they stopped.

15.     The day after Ms. Taylor made her report to Mr. Alexander and Ms. Nguyen, Mr. Butler told several of his co-workers that Ms. Taylor had accused him of raping her, which she had not.

16.     After Ms. Taylor's report to Mr. Alexander and Ms. Nguyen, Mr. Butler's physical contact with Ms. Taylor subsided for a short time.  However, it soon began again.  Mr. Butler would block Ms. Taylor's way so that she had to touch him to move past him, he would stand behind her chair in a threatening manner, and instead of asking Ms. Taylor to hand him things, Mr. Butler would reach over Ms. Taylor, rub against her, and then get them for himself.

17.     On February 22, 2009, Ms. Taylor made a second report to Seton regarding Mr. Butler.  This report was made by e-mail, and listed the names of several female employees who Ms. Taylor believed had also been harassed by Mr. Butler, including the other two plaintiffs in this lawsuit, Elizabeth Cooper and Jennifer Nguyen.

18.     After Ms. Taylor's February 2009 complaint, Mr. Butler continued his inappropriate

behavior toward her. On one occasion, Mr. Butler pulled his chair up right next to Ms. Taylor's and began rubbing his crotch so that Ms. Taylor could see him doing it. Ms. Taylor complained to Seton again about Mr. Butler in April 2009.

19.    Following her complaints regarding Mr. Butler's sexually inappropriate conduct, Seton began taking action against Ms. Taylor, including by changing her floor assignment to work that she was medically restricted from performing, reducing her work schedule, disciplining her for things other Clinical Assistants do not get disciplined for, and criticizing Ms. Taylor for complaining of sexual harassment. As a result of Seton's pattern of action against Ms. Taylor, Ms. Taylor was constructively discharged from her position with Seton on October 19, 2009.

**Jennifer Nguyen**

20.    Plaintiff Jennifer Nguyen was hired by Seton in July 2008 as a Clinical Assistant. As with Ms. Taylor, Defendant John Butler began acting in a sexually inappropriate manner toward Jennifer Nguyen from the beginning of her employment. Mr. Butler rubbed Ms. Nguyen's shoulders and her back and put his arms around her waist from behind. This conduct was Mr. Butler's standard way of greeting Ms. Nguyen, and occurred at least four or five times per day. Mr. Butler also regularly came up behind Ms. Nguyen, touched her hair and smell it, and touched her from behind. Mr. Butler also rubbed his crotch in Ms. Nguyen's presence, and stared at her while he did it.

21.    Mr. Butler engaged in other inappropriate conduct toward Ms. Nguyen as well, including leaning over her and telling her she smelled good, sharing information about his sex life with Ms. Nguyen, and offering to take off his shirt, ostensibly to show Ms. Nguyen his sunburn. Mr. Butler also commented on the attractiveness of women on the floor, including not only other employees but also family members of patients and other women who came to their work location.

Ms. Nguyen found this conduct to be offensive.

22.     When Mr. Butler began engaging in the behavior described above, Ms. Nguyen told him: "John, don't do that, I don't like it."  However, he would not stop behaving in this manner. Ms. Nguyen told Mr. Butler repeatedly that she did not like what he was doing and that it was making her uncomfortable, but he would not stop.

23.     On February 22, 2009, Josie Taylor reported in an e-mail that Mr. Butler had touched Ms. Nguyen in a manner that Ms. Taylor observed had made Ms. Nguyen feel uncomfortable. Specifically, Ms. Taylor reported that Mr. Butler had taken a piece of Ms. Nguyen's hair in his hand and leaned over and smelled it.

24.     In or around the beginning of April 2009, Ms. Nguyen's supervisor, Hue Nguyen (no relation to Plaintiff Nguyen), informed Ms. Nguyen that her name had been mentioned in relation to a sexual harassment charge.  Jennifer Nguyen confirmed to Hue that she had been sexually harassed by John Butler.  Jennifer Nguyen also told Hue that she did not report Mr. Butler's conduct because she understsood that it had been reported a long time before, and Seton had not done anything about it.

25.     Several days later, Hue Nguyen summoned Plaintiff Nguyen into her office and told her that she thought her job performance was not up to par.  Plaintiff Nguyen's job performance had never been criticized until she told Hue Nguyen about Mr. Butler's sexual harassment.

26.     On April 29, 2009, Plaintiff Nguyen filed a Charge of Discrimination against Seton, stating claims that she was being sexually harassed and discriminated against because of her gender by Seton.

27.     After Plaintiff Nguyen filed her Charge, Seton initiated a pattern of retaliation against Plaintiff Nguyen because of her charge, consisting of unwarranted discipline, threats of discipline,

denial of raises, and refusal to abide by Ms. Nguyen's physician's restrictions.

28.     On or around March 4, 2010, Seton terminated Ms. Nguyen's employment.  The reason given for the termination is a pretext for gender discrimination and retaliation.

**Elizabeth Cooper**

29.     Plaintiff Elizabeth Cooper was hired by Seton in April 2007.  In or around January 2009, she transferred to Seton's Williamson County facility, where Defendant John Butler worked.

30.     Mr. Butler was the charge nurse on the floor where Ms. Cooper worked.  From the first day Ms. Cooper worked with Mr. Butler, he did things that made her uncomfortable.  Every time Ms. Cooper worked on the same shift as Mr. Butler, Mr. Butler would touch Ms. Cooper by putting his arm around her waist or shoulders, and would stand so close to her that it made her uncomfortable.

31.     On or around February 7, 2009, Mr. Butler caught Ms. Cooper as she was passing the supply closet and pulled her by the hips into the room.  Ms. Cooper asked Mr. Butler why he had done that, and he said that it was to "help you understand how to do things around here."  Ms. Cooper told Mr. Butler not to ever do that again because it made her feel uncomfortable.  Even after that incident, however, Mr. Butler continued to touch Ms. Cooper whenever the two worked together.  Ms. Cooper told Mr. Butler repeatedly to stop touching her, but he would not stop.

32.     On or about February 14, 2009, Mr. Butler followed Ms. Cooper into the supply room and grabbed her around the arms and chest.  Ms. Cooper tried to get away but could not, because Mr. Butler had a tight grip on her.  When Ms. Cooper asked Mr. Butler what he was doing, he told her "I'll beat you with a wet noodle if you don't start doing this right."

33.     On several occasions during the month of February 2009, Mr. Butler told Ms. Cooper: "If I want you hurt I would I would do it myself."  Mr. Butler also grabbed Ms. Cooper by her

shoulders and shook her.

34.     On or around February 14, 2009, Ms. Cooper reported to Hue Nguyen that Mr. Butler was behaving inappropriately toward her.  Ms. Cooper reported to Ms. Nguyen that Mr. Butler was touching her in ways that made Ms. Cooper feel uncomfortable, and told her specifically about the incidents in the supply room.

35.     Approximately one week after her report to Hue Nguyen, Ms. Cooper reported to Tracie Thor, a Human Resources representative from Seton, the same things that she told Ms. Nguyen.

36.     After Ms. Cooper's reports to Ms. Nguyen and Ms. Thor, Mr. Butler continued to touch Ms. Cooper inappropriately during every shift when the two of them worked together.  This occurred until Ms. Cooper was transferred to night shifts in the Spring of 2009.

37.     Since Ms. Cooper complained about Mr. Butler, Seton has refused to promote her to the position of Clinical Assistant III, for which she expressed interest, including in August 2009 during her performance review.

38.     On September 4, 2009, Ms. Cooper filed a Charge of Discrimination with the E.E.O.C. regarding sexual harassment, gender discrimination, and retaliation by Seton.  In December 2009, Seton suspended Ms. Cooper's employment for a period of three days for reasons that were a pretext for Seton's intent to retaliate against Ms. Cooper.  In January 2010, Ms. Cooper was forced to resign from her employment with Seton.

## CAUSES OF ACTION

## COUNT ONE - DISCRIMINATION
## AND RETALIATION UNDER TITLE VII

39.     The allegations contained in Paragraphs 1 through 38 inclusive are hereby

incorporated by reference.

40.     Plaintiffs timely filed with the Equal Employment Opportunity Commission (EEOC) Charges of Discrimination against Defendant Seton. Plaintiffs received notices of the right to sue from the EEOC within 90 days of the filing of this complaint.

41.     Plaintiffs were a employees within the meaning of Title VII and belong to a class protected under the statute, namely Plaintiffs were discriminated against because of their gender(female) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e2(a)(1).

42.     Defendant Seton is an employer within the meaning of Title VII.

43.     Title VII of the Civil Rights Act of 1964 states, in pertinent part, that, "(a) It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

44.     Defendant Seton intentionally discriminated against Plaintiffs because of their gender (female) in violation of Title VII by subjecting Plaintiffs to the events described above, including but not limited to subjecting Plaintiffs to sexual harassment and a sexually hostile work environment, and terminating and/or constructively terminating Plaintiffs.

45.     The conduct of the Defendants was so severe or pervasive as to create a hostile working environment for the Plaintiffs.

46.     Defendant Seton unlawfully retaliated against Plaintiffs for making a discrimination

complaint, participating in a discrimination investigation or otherwise opposing discrimination by the employer. Plaintiffs made discrimination complaint, participated in a discrimination investigation, and opposed a discriminatory practice, suffered adverse employment actions as a result in that Defendant Seton engaged in the practices described above, including disciplining Plaintiffs, refusing to promote Plaintiff Cooper, refusing pay raises, and ultimately either terminating or constructively terminating all Plaintiffs.  With respect to each Plaintiff, there is a causal connection between the making of the discrimination complaint, the participation in a discrimination investigation, and the opposition to the discriminatory practice and the adverse employment actions. The unlawful practices committed by Defendant Seton were and are a direct cause of Plaintiff's damages, as more fully set forth below.

47.     All of the discrimination, harassment, and retaliation were done wilfully and with malice and reckless disregard for the rights of the Plaintiffs.

48.     This Count is brought against Defendant Seton only.

## COUNT TWO - DISCRIMINATION AND RETALIATION
## UNDER THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

49.     The conduct of the Defendant Seton towards Plaintiffs, through its agents, employees, managers, and supervisors, as set forth above, among other activities constitutes gender discrimination, in direct violation of §21.001, *et. seq.*, Labor Code, Vernon's Texas Codes Annotated, which states, in pertinent part, that:

> "An employer commits an unlawful employment practice if...the employer...discriminates against an individual...or...classifies an employee...in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any manner the status of an employee."

Plaintiffs' gender was a determining or motivating factor in Defendant Seton's employment decisions regarding Plaintiffs.  Plaintiffs' gender moved Seton toward their decisions or was a factor

that played a part in those employment decisions as to Plaintiffs.

50.     Additionally, Plaintiffs were subject to unwelcome harassment based on their gender. The unwelcome harassment was sufficiently severe or pervasive to alter the conditions of Plaintiffs' employment and created a hostile working environment. Defendant Seton knew or should have known of the harassment and failed to take prompt remedial action.  Defendant Seton had actual and/or constructive knowledge of the hostile environment caused by its employees and therefore is liable for their actions.

51.     In addition, Defendant Seton retaliated against Plaintiffs for complaining of sexual harassment.   See Texas Labor Code §21.055. Plaintiffs' discrimination complaints were a determining or motivating factor in Defendant Seton's  employment decisions regarding Plaintiffs, as described above.

52.     This Count is brought against Defendant Seton only.

## COUNT THREE - ASSAULT AND OFFENSIVE PHYSICAL CONTACT

53.     Defendant Butler intentionally or knowingly caused Plaintiffs to suffer apprehension of imminent harmful or offensive bodily contact, along with actual offensive bodily contact.  Such assaults were a proximate cause of Plaintiffs' injuries and damages, as set forth below. Defendant Seton is liable for this assault and offensive physical contact pursuant to the doctrine of respondeat superior.  At all times relevant to this action, Defendant Butler was an employee of Seton. Defendant Butler was in the course and scope of his employment with Seton when the incidents made the basis of this suit occurred, and Seton had the right to control the details by which Defendant Butler performed his duties. Therefore, Seton is vicariously liable for the acts and/or omissions of Defendant Butler through the doctrine of respondeat superior.

## COUNT FOUR - RATIFICATION

54.     Further pleading in the alternative, Defendant Seton ratified the actions of Defendant Butler. Plaintiffs were assaulted by Defendant Butler while they were working for Defendant Seton, and Defendant Seton approved the acts by word, act and/or conduct after acquiring full knowledge of the act, and the approval was given with the intention of giving validity to the act. As such, Defendant Seton is liable for the actions of Defendant Butler.

## COUNT FIVE - NEGLIGENCE\

55.     Defendant Seton was negligent by:

    a.     failing to use ordinary care in hiring employees, including, but not limited to, John Butler;
    b.     failing to inquire into the qualifications of employees, including, but not limited to, John Butler;
    c.     failing to inquire into the criminal backgrounds of employees, including, but not limited to, John Butler;
    d.     failing to use ordinary care in supervising employees, including, but not limited to, John Butler;
    e.     failing to use ordinary care in retaining employees, including, but not limited to, John Butler;
    f.     failing to remain knowledgeable about employees' competence and fitness, including, but not limited to, John Butler;
    g.     failing to use ordinary care in training employees, including, but not limited to, John Butler.

56.     Such negligence was a proximate cause of Plaintiffs' injuries and damages, as set forth below.

## DAMAGES

57.     As a result of Defendants' unlawful conduct, Plaintiffs have suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

Plaintiffs have also incurred other actual damages as a result of Defendants' unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

58.    Defendants have intentionally engaged in an unlawful conduct toward Plaintiffs. Plaintiffs additionally bring suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, job search expenses, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

59.    The conduct committed by Defendants against Plaintiffs is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiffs. Therefore, Plaintiffs additionally bring suit for punitive damages.

## ATTORNEYS' FEES AND EXPERT FEES

60.    A prevailing party may recover reasonable attorneys' and experts' fees under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act.  Plaintiffs seek all reasonable and necessary attorneys' fees in this case from Defendants, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals.  Plaintiffs additionally bring suit for expert fees.

## JURY DEMAND

Plaintiffs demand a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that:

1.  The Court assume jurisdiction of this cause;

2.  The Court award Plaintiffs damages as specified above;

3.  The Court award Plaintiffs reinstatement or, in the alternative, front pay.

4.  The Court award Plaintiffs reasonable attorneys' and expert fees and costs;

5.  The Court award Plaintiffs pre- and post-judgment interest at the highest rates allowed.

Plaintiffs further pray for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

ROSS LAW GROUP
1104 San Antonio St.
Austin, Texas 78701
(512) 474-7677 Telephone
(512) 474-5306 Facsimile


s/ Kell A. Simon
Kell A. Simon
State Bar No. 24060888
ATTORNEY FOR PLAINTIFFS