IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOSIE TAYLOR, JENNIFER NGUYEN, and ELIZABETH COOPER, Plaintiffs, | § § § § |
| v. | §  CIVIL ACTION NO. 1:10-cv-650-LY |
| SETON HEALTHCARE d/b/a SETON MEDICAL CENTER WILLIAMSON and JOHN BUTLER, Defendants. | § § § § § § |

### DEFENDANT SETON HEALTHCARE'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ELIZABETH COOPER

Defendant Seton Healthcare d/b/a Seton Medical Center Williamson ("Defendant" or "Seton") files this, its Motion for Summary Judgment against all claims asserted by Plaintiff Elizabeth Cooper, and respectfully shows the Court the following:

### SYNOPSIS

Seton is entitled to summary judgment on all claims asserted against it by Plaintiff Elizabeth Cooper, its former employee. Cooper's sexual harassment claims under state and federal law fail because she cannot show that she was subjected to severe or pervasive harassment, or that Seton had any knowledge that she was contending that she had been harassed. In addition, Cooper's retaliation claims fail because she has admitted she was not forced to resign; there is no evidence of a connection between her alleged protected activity and any adverse employment action; and she has admitted that Seton had legitimate, non-discriminatory reasons for not promoting her and for suspending her. Furthermore, Cooper's attempts to impose vicarious liability on Seton for the alleged assaults of a Seton nurse, Defendant John Butler, fail as a matter of law because he was not acting in the course or scope of

his employment when he allegedly assaulted Cooper, and because there is no evidence Seton ratified the alleged assault.  Finally, Cooper's various negligence claims against Seton are barred because Seton is a workers' compensation subscriber.

## SUMMARY JUDGMENT EVIDENCE

Seton offers the following evidence in support of its Motion for Summary Judgment:

- Ex. 1: Excerpts from the deposition of Plaintiff Elizabeth Cooper, with select exhibits ("Cooper Dep.");

- Ex. 2: The affidavit of Cooper's supervisor, Hue Nguyen,[1] with exhibits ("H. Nguyen Aff.");

- Ex. 3: The affidavit of Human Resources Generalist Tracie Thor, with exhibits ("Thor. Aff."); and

- Ex. 4: The affidavit of Seton's Director of Human Resources Operations, Cheryl Williams ("Williams Aff.").

## STATEMENT OF FACTS

**A.     Background**

Seton hired Elizabeth Cooper in April of 2007.  Cooper Dep. 13:18-23.  Cooper transferred to the medical/surgical unit of Seton Medical Center Williamson ("Seton Williamson"), the facility where the events giving rise to this lawsuit took place, in January 2009.  Cooper Dep. 14:7-14, 38:18-23.  Seton Williamson opened in February 2008, and at all times and without interruption, Seton maintained workers' compensation insurance coverage for all employees of this facility.  Williams Aff. ¶ 3.  During her time at Seton Williamson, Cooper was a level two clinical assistant ("CA II").  Cooper Dep. 39:8-9.  Her responsibilities included assisting with patient care and taking vital signs, until she switched to the night shift in early April 2009, at which point she monitored the cardiac monitors fulltime.  Cooper Dep. 23:5-15,

---

[1] Hue Nguyen and one of the plaintiffs, Jennifer Nguyen, have the same name but are not related.  Seton's motion will use the first and surnames for both to avoid confusion.

39:13-40:1.

Cooper worked on the third floor at Seton Williamson, as did the two other plaintiffs in this case, Josie Taylor and Jennifer Nguyen, who were also clinical assistants, and the other defendant, John Butler, a nurse. Cooper Dep. 39:5-7; H. Nguyen Aff. ¶¶ 4-5. Taylor, Cooper, and Jennifer Nguyen are friends and socialize outside of work. Cooper Dep. 28:23-29:18, 33:3-9. Cooper and Butler's schedule only overlapped for less than three months, between January 25, 2009 and April 3, 2009. Cooper Dep. 122:23-123:4; H. Nguyen Aff. ¶ 7. At all times relevant to this lawsuit, the clinical manager for the third floor at Seton Williamson was Hue Nguyen, and she was Cooper's supervisor. H. Nguyen Aff. ¶¶ 2-5; Cooper Dep. 38:18-25. The Seton Human Resources Generalist with responsibility for Seton Williamson at all times relevant to this lawsuit was Tracie Thor. Thor Aff. ¶ 2.

**B.     Cooper's contemporaneous statements to Seton about Butler did not indicate that she observed or experienced any inappropriate conduct by Butler.**

Within the first two months of starting work for Seton, Hue Nguyen completed a "New Hire Check In" with Cooper, which solicited information about Cooper's satisfaction with her job. Cooper Dep. 51:18-20 & Ex. 3; H. Nguyen Aff. ¶ 6 & Ex. A. Cooper did not indicate that she had any issues with Butler, and in fact stated on the form that Butler had been especially helpful to her. Cooper Dep. 53:19-24, 54:15-23; H. Nguyen Aff. ¶ 6. The form also asked Cooper to indicate any frustrations that she had experienced with the job, and the only frustration she mentioned was the patient load. Cooper Dep. 56:7-11; H. Nguyen Aff. ¶ 6. Moreover, Cooper stated there was nothing that she would change about the unit, that she did not have any concerns about the job, and that she "loved" all of the staff, which included Butler. Cooper Dep. 56:19-57:14; H. Nguyen Aff. ¶ 6. She signed the document and testified that she did so because she agreed with what it said. Cooper Dep. 52:22-24; H. Nguyen Aff. ¶ 6.

In addition, in April of 2009, Cooper indicated to Seton she had no issues with Butler. At that time, Seton was investigating Josie Taylor's claims that Butler had harassed Taylor in April 2009. H. Nguyen Aff. ¶ 8. As part of that investigation, Hue Nguyen interviewed Cooper. H. Nguyen Aff. ¶ 8. After the interview, Nguyen typed a statement and emailed it to Cooper for her to review. Hue Aff. ¶ 8 & Ex. B. Cooper emailed the statement back to Hue Nguyen the next day and confirmed it was accurate. Hue Aff. ¶ 8 & Ex. B. In her statement, Cooper indicated that she did not witness any sexual misconduct on the third floor; that she had not been touched inappropriately by anyone on the third floor; that Butler had hugged her once "in a thankful way"; and that she did not have any concerns regarding sexual misconduct on the third floor. H. Nguyen Aff. Ex. B  Although Cooper now claims she does not remember sending the email, she does not deny that she sent it either. Cooper Dep. 65:11-21.

In June 2009, Cooper again indicated to Seton that she did not have any issues with Butler. At that time, Seton was conducting another investigation into claims by Josie Taylor involving Butler. Thor Aff. ¶ 3. HR Generalist Tracie Thor, who was involved in the investigation, contacted Cooper to follow up regarding the questions Cooper had been asked in April. Thor Aff. ¶ 3. Cooper confirmed to Thor that her April statement was accurate and that she had nothing to add, and Thor noted that on her copy of the statement. Thor Aff. ¶ 3 & Ex A. Although Cooper now claims that she does not remember what she said to Thor in June, she does not deny that she affirmed her statement either. Cooper Dep. 66:7-25.

**C.    Cooper now claims Butler touched her inappropriately in the spring of 2009.**

Notwithstanding the documented statements set forth above, Cooper now claims that Butler's inappropriate conduct began when she first started working at Seton Williamson. Cooper Dep. 41:17-42:5. Specifically, she claims that on her first day at Seton Williamson,

Butler put his hand on her shoulder.  Cooper Dep. 43:8-14.  She also claims that shortly after she started at Williamson, on February 7, 2009, he "put his arm around [her] waist and pulled [her] into the supply closet."  Cooper Dep. 44:24-45:15.  He did not touch her in any private area, just on her hip as he directed her into the supply closet.  Cooper Dep. 46:13-18, 123:18-18, 150:8-14.  Butler did not touch her again once they were inside the supply closet; he just talked to her about drawing blood.  Cooper Dep. 150:15-19; 47:13-20.  Cooper claims that a week later, on February 14, 2009, she was in the supply closet again and Butler came in and put his arms around her waist from behind (without touching her breast area).  Cooper Dep. 46:19-47:9.  She later clarified that she thought he had squeezed her too tightly but that it only lasted a couple of seconds.  Cooper Dep. 150:20-151:5; 153:3-7.  According to Cooper, during this incident, Butler again talked to her about drawing blood.  Cooper Dep. 47:13-20.  He also said something about having to beat her "with a wet noodle."  Cooper Dep. 47:15.  Cooper testified that she did not know what he meant by that but it made her uncomfortable.  50:16-25.  Cooper also now claims, despite the documented statements set forth above, that she reported Butler's touching to both Hue Nguyen and Tracie Thor in February 2009.[2]  Cooper Dep. 71: 6-25.

      Hue Nguyen and Tracie Thor have both testified that Cooper never complained to them about Butler, and the first they heard of any complaints by Cooper was when they received the EEOC charge that she filed in the autumn of 2009.  H. Nguyen Aff. ¶ 9; Thor Aff. ¶ 4.  Seton's harassment policy "strongly urges the reporting of all incidents of discrimination, harassment, or retaliation, regardless of the offender's identity or position."  H. Nguyen Aff. ¶ 12 & Ex. F.  The policy directs employees who have experienced or observed conduct that they believe is harassing to report to the conduct to their supervisor or to Human Resources.  H. Nguyen Aff. ¶ 12 & Ex. F.  There is no other evidence in the record of any complaints by Cooper.

---

[2] Notably, Cooper testified that she never witnessed Butler touch Jennifer Nguyen or Taylor.  Cooper Dep. 126:4-6.

**D.     Cooper was disciplined in December 2009 for lying.**

In December of 2009, Cooper was disciplined by Seton when she lied to Seton about why she had to edit her time entry, claiming she had lost her badge when she had not.  H. Nguyen Aff. ¶ 10 & Ex. C.  Cooper was caught in the lie and she admitted in her deposition both that she lied and that Seton was justified in disciplining her for lying.  Cooper Dep. 105:10-108:10 & Ex. 10.  Seton suspended her without pay for this misconduct.  Cooper Dep. 105:10-106:3; H. Nguyen Dep. ¶ 10.

**E.     Cooper voluntarily resigned; she testified that she was not forced to resign.**

The day she was scheduled to return to work following her suspension, Cooper was tardy. Cooper Dep. 111:1-18.  Afraid of the impact of her tardiness occurring immediately after she had been suspended for lying, Cooper sent Hue Nguyen an email resigning and then contacted Hue Nguyen the following morning to talk.  H. Nguyen Aff. ¶ 11 & Ex. D.  Hue Nguyen documented the conversation in an "anecdote," and Cooper testified that the anecdote accurately reflects their conversation.  H. Nguyen Aff. ¶ 11 & Ex. D; Cooper Dep. 111:25-112:7. & Ex. 12.  In the conversation, Cooper informed Hue Nguyen that it was stressful working two jobs and over 70 hours per week.  Cooper Dep. 112:15-23.  Her conversation with Hue Nguyen took place at 7:30 a.m. on January 6, 2010, and Cooper forwarded her resignation email to Tracie Thor shortly thereafter.  Cooper Dep. 113:8-13, 108:12-109:1 & Ex. 11.  In Cooper's email, one of her reasons for quitting was that she could not be promoted to the "CA III" position at Seton Williamson because the third floor did not need CA IIIs, who are used on intensive care floors and in emergency rooms.  Cooper Dep. Ex. 11 & 109:2-11, 116:7-11.

Cooper testified in her deposition that she is not claiming that Seton forced her to resign. Cooper Dep. 113:22-24.  She admitted that she resigned because she thought it would look better

than a termination, which was the consequence she anticipated for being tardy immediately after a suspension for lying; moreover, no one at Seton told her to resign.  Cooper Dep. 114:12-115:11.

**ARGUMENT**

The Court should grant Seton's summary judgment against Elizabeth Cooper pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  There is no genuine issue as to any material fact and Seton is entitled to judgment as a matter of law on Cooper's claims of sexual harassment, retaliation, vicarious liability for assault, and negligence.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**A.  Cooper's hostile work environment claims under Title VII and the TCHRA fail because there is no evidence that she was subjected to severe or pervasive harassment, or that she ever told Seton that she was being harassed**.

Cooper claims that Butler sexually harassed her by creating a hostile work environment. To prevail on this claim, Cooper would have to prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) Seton knew or should have known of the harassment and failed to take prompt, remedial action. *See Hockman v. Westward Comms., LLC,* 407 F.3d 317, 325 (5th Cir. 2004).

1. **The record contains no evidence of "severe" or "pervasive" harassment.**

For alleged harassment "to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive." *Id*. (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  "Whether an environment is objectively hostile or abusive is determined by considering the totality of the circumstances." *Id*.  These circumstances include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work

performance; and whether the alleged harassment "unreasonably undermines the plaintiff's workplace competence." *Id*. at 325-26.

Applying this standard to a case involving considerably more egregious allegations than Cooper's, the Fifth Circuit in *Hockman* held that the alleged conduct did not constitute severe or pervasive harassment as a matter of law and affirmed summary judgment for the employer on the plaintiff's hostile work environment claim. *Id*. at 328-329. In that case, the plaintiff claimed the alleged harasser, over the course of one and half years, had made a comment about another employee's body, slapped her on the behind once with a newspaper, "grabbed or brushed" against the plaintiff's breasts and behind, held her cheeks and tried to kiss her, asked the plaintiff to come to the office early so that they could be alone, and had once stood in the door of the bathroom while she washed her hands. The Fifth Circuit held that this evidence did not constitute evidence of severe or pervasive harassment. In reaching this conclusion, the Fifth Circuit noted that these allegations were not as egregious as the conduct alleged in another case where the Fifth Circuit had affirmed summary judgment for the employer, in which the alleged harasser had remarked on the color of the plaintiff's nipples and the size of her thighs and had attempted to look down her clothes. *Id*. (citing *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872 (5th Cir. 1999)). The *Hockman* court characterized the harasser's comments as perhaps boorish or offensive but not sufficiently severe, describing them as "simple teasing." Id. at 328. The Court also noted that the alleged brushings were not sufficiently severe or pervasive, and contrasted them to cases where the harasser made contact "repeatedly" or multiple times per week. *Id*. at 328.

The conduct Cooper has described is simply not as egregious as the conduct of the alleged harassers in *Hockman* or *Shepherd*, and summary judgment was affirmed for the

employers in both of those cases. As is laid out in the Statement of Facts, when asked in her deposition to explain all incidents that serve as the bases for her allegations of sexual harassment, Cooper testified that Butler put his hands on her shoulder, that he touched her hip once, that he embraced her from behind once, and that he used the expression that he would "beat her with a wet noodle." The "wet noodle" [3] comment was, at worst, "simple teasing," and the incidents where Butler allegedly touched Cooper in non-private areas are less severe than those alleged by the plaintiff in *Hockman*, who was alleging contact with her breasts and bottom, and less pervasive, since Cooper alleges that he touched her hip once and embraced her from behind once.

Furthermore, the plaintiff's subjective reaction to the alleged conduct is dispositive in analyzing hostile work environment claims, and Cooper herself indicated in her April and June 2009 statements to Seton that she had not experienced any harassing conduct. In sum, the set of incidents alleged by Cooper do not constitute harassment that is either "severe" or "pervasive," and therefore Seton is entitled to summary judgment on Cooper's claim.

2. **Cooper cannot prove that Seton knew or should have known of the alleged harassment and failed to take prompt remedial action.**

An employer who takes prompt remedial action after a plaintiff informs it of alleged harassment can avoid liability for that harassment if it takes prompt remedial action. *Hockman*, 407 F.3d at 329. Here, the evidence establishes that during the time frame that Cooper now alleges that Butler subjected her to harassment—approximately January 27, 2009 to April 3, 2009—Cooper's statements to Seton were that she had no issue with Butler and that she had not witnessed him harassing anyone else. *See* Statement of Facts, §§ A—B, *infra*. Because Cooper

---

[3] Seton requests that the Court take judicial notice that "lashes with a wet noodle" is an expression largely attributed to Ann Landers, who used it to describe a mild punishment for small offenses, and that it has no known sexual connotation. *See, e.g.*, Margalit Fox, *Ann Landers, Advice Giver To the Millions, Is Dead at 83*, NY Times, June 23, 2002 (describing "40 lashes with a wet noodle" as Ann Landers's "customary penance" in her obituary.)

did not report any alleged harassment, Seton's duty to take prompt remedial action was not triggered, and Cooper's harassment claim therefore fails on this prong as well.

Furthermore, the Court should disregard Cooper's new contention that she complained about Butler in February. Seton disputes that Cooper made any such complaints in February; as the Statement of Facts explains, her claims that she complained in February are contradicted by the overwhelming evidence in the record of the statements she made to Seton in the Spring of 2009. At the summary judgment stage, credibility determinations should usually be left for trial but "a court may disregard testimony and render judgment as a matter of law when no reasonable jury could find the testimony credible." *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757 (S.D. Tex. 2009) (relying on the language in *Anderson v. City of Bessemer*, 470 U.S. 546, 575 1985, that factors other than demeanor and inflection go into the decision whether or not to believe a witness; documents or objective evidence may contradict the witness's story; or the story may be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it).

However, even if the Court assumes that Cooper did make a complaint in February, the Fifth Circuit has held on multiple occasions that employers are entitled to judgment as a matter of law on hostile work environment claims if the evidentiary record establishes that the allegedly harassing behavior ceased after the plaintiff reported the harassment. *See Skidmore v. Precision Printing & Pckg. Inc*., 188 F.3d 606, 616 (5th Cir. 1999) (collecting cases). In this case, Cooper stated in the investigation interview that Butler was not harassing her, and Cooper stopped working the same shifts as Cooper by April 2, 2009; therefore, the record establishes any allegedly harassing conduct ceased.

**B.     Cooper's retaliation claims fail on a prima facie level and because Seton has proffered legitimate, non-discriminatory reasons its actions.**

In addition to alleging she was harassed, Cooper alleges that she was retaliated against for exercising her rights under Title VII and the TCHRA.  Specifically, Cooper claims that Seton failed to promote her from CA II to CA III, suspended her, and constructively discharged her for engaging in protected activity. Where, as in this case, there is no direct evidence of discriminatory retaliation, a plaintiff alleging retaliation can only survive a motion for summary judgment if she can meet the evidentiary burden established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* framework, the initial burden of establishing a prima facie case of retaliation lies with the plaintiff. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007). If the plaintiff establishes a prima facie case, only then does the burden shift to the employer to show a legitimate, non-discriminatory reason for its actions. *Id*. If the employer offers such a reason, then the burden shifts back to the plaintiff to show that the justification is merely pretext for discrimination. *Id*.  This burden shifting framework applies to retaliation claims under the TCHRA as well under Title VII.  *See Pineda v. United Parcel Service, Inc*., 360 F.3d 483, 487 (5th Cir. 2004).

**1.  Cooper admits she was not forced to resign and so Seton is entitled to summary judgment on her retaliation claim based on constructive discharge.**

Cooper has alleged that she was constructively discharged in retaliation for engaging in a protected activity.  To establish a prima facie case of retaliation based on constructive discharge, a plaintiff "must prove that working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." *Harvill v. Westward Communications, L.L.C*., 433 F.3d 428, 439-440 (5th Cir. 2005) (internal quotation omitted). However, in this case, Cooper herself testified that she is not claiming that Seton forced her to resign.  Cooper Dep. 113:22-24.  She admitted that she quit after she was tardy to work after

having been legitimately suspended for lying to her employer and she wanted to quit because she thought a resignation would look better on her record that an involuntary termination. Cooper Dep. 114:12-115:11. There is no evidence that she quit because of Butler's alleged harassment as she quit in January 2010, and she had not worked with Butler since the spring of 2009. *See* Statement of Facts, *infra*. There is also no testimony that anyone else at Seton was subjecting her to the type of harassment that would have compelled her to resign. Therefore, Seton is entitled to summary judgment on Cooper's claim that she was constructively discharged in retaliation for engaging in a protected activity.

> **2. Cooper cannot prove a prima facie case of retaliation based on Seton's failure to promote her, and Seton can show she was not promoted for legitimate, non-discriminatory reasons.**

Cooper also contends that she was not promoted from CA II to CA III in retaliation for engaging in protective activity. To establish a prima facie case of retaliation, a plaintiff must present evidence that (1) she engaged in an activity protected by Title VII or the TCHRA; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Pineda.*, 360 F.3d at 487. Cooper cannot prove the third element. She alleges in her complaint that she expressed an interest in a promotion in August 2009, but the promotion was denied in retaliation for complaints she allegedly made about Butler seven months earlier in February.

As is explained, infra, Seton disputes that Cooper made any such complaints in February and her claims that she complained in February are contradicted by the overwhelming evidence in the record of the statements she made to Seton in the Spring of 2009. Because Cooper's deposition testimony contradicts her own multiple contemporaneous statements and all other objective evidence in the record, the Court should disregard it. *See Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757 (S.D. Tex. 2009) (holding that at the summary judgment stage, "a

court may disregard testimony and render judgment as a matter of law when no reasonable jury could find the testimony credible.").

However, even if the Court considers Cooper's testimony and assumes for purposes of summary judgment only that she did make a complaint in February, there is no evidence in the record that any alleged report in February had any impact on Seton's decision whether to promote her from to CA II to CA III in August. A plaintiff alleging retaliation must present "*some* evidence of a causal link." *Ackel v. Natl. Comm., Inc*., 339 F.3d 376, 385 (5th Cir. 2003) (emphasis in original). A plaintiff can rely on the temporal proximity between an adverse employment action and the protected activity to satisfy the causal link element of the prima facie case, but the temporal proximity must be "very close." *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (citing cases that held that gaps of three and four months are too long to establish the causal connection element). Here, there was almost a seven month gap between Cooper's alleged reports and the August promotion decision, and therefore Cooper has failed to adequately support her prima facie case.

Regardless, even if Cooper could establish a prima facie retaliation case based on Seton's promotion decision, Seton has met its summary judgment burden to establish legitimate, non-discriminatory reasons for not promoting Cooper to CA III, because, as Cooper has admitted, the floor where Cooper was assigned to work only requires CA IIs; in fact, one of the reasons Cooper gave Seton in support of her decision to resign was the fact that she could not "grow" in that position since the third floor did not need CA IIIs. Cooper Dep. 109:2-11, 116:7-11, & Ex. 11. It is also important to note that Seton gave Cooper a pay raise in October 2009, which is at odds with her claim that it was retaliating against her. Cooper Dep. 97:3-21. & Ex. 8. In short, Seton is entitled to summary judgment on Cooper's retaliation claim because she has failed to

meet her prima facie burden, and because Seton has proffered evidence of legitimate, non-discriminatory reasons for not promoting her.

### 3. Cooper has admitted that she was suspended in December 2009 for legitimate, non-discriminatory reasons, and therefore her final retaliation claim also fails.

Cooper's final allegation of retaliation is that Seton suspended her in December 2009 in retaliation for engaging in protected activity. Again, Cooper cannot support her prima facie case because she can point to no evidence of a causal connection between her December 2009 suspension and any protected activity that she allegedly engaged in. *See Pineda.,* 360 F.3d at 487 (third element of a prima facie case is that a causal connection exists between the protected activity and the adverse employment action).

However, even assuming that she could establish a prima facie case, it is undisputed that Cooper was disciplined for legitimate, non-discriminatory reasons, as Cooper's own testimony proves. She was disciplined when she lied to Seton about why she had to edit her time and she was caught in the lie; she testified in her deposition both that she lied and that Seton was justified in disciplining her for lying. Cooper Dep. Ex. 10 & 105:10-108:10. Because it is undisputed that Seton had a legitimate, non-discriminatory reason for suspending Cooper, it is entitled to summary judgment on the retaliation claim based on this adverse employment action as well.

### C. Seton is entitled to summary judgment on Cooper's claims that it should be vicariously liable for any assault by Butler.

In addition to suing Seton for sexual harassment and retaliation, Cooper has sued John Butler for assault based on his touching her on the shoulder and the two incidents in the supply closet, and she seeks to impose vicarious liability upon Seton for those alleged assaults. However, Seton cannot be held vicariously liable for the alleged assaults based on either vicarious liability claim pled in her complaint, respondeat superior or ratification. Assuming without conceding that Cooper even could prove the elements of her assault claim, Seton would

not be vicariously liable for Butler's alleged assaults because there is no evidence that Butler was acting in the course and scope of his employment, that he was acting on Seton's behalf, or that he was acting with Seton's approval when he committed any alleged assault.

### 1. Seton is not liable for any alleged assault on a respondeat superior claim, and Cooper has waived any vice principal claim against Seton.

Cooper has asserted a respondeat superior claim against Seton based on Butler's alleged assault. To impose liability on an employer for an assault by an employee via a respondeat superior claim, a plaintiff must show that the alleged assailant was acting in the course and scope of his employment when he committed the assault. *See Buck v. Blum,* 130 S.W.3d 285, 288 (Tex. App. –Houston [14th Dist.] 2004, no pet.). In *Buck*, the Houston Court of Appeals awarded summary judgment to a neurological institute when one of its doctors, while performing a grip test, placed his penis in the patient's hand instead of the appropriate instrument. *Id*. at 289. The patient sued the institute, alleging a respondeat superior claim based on the doctor's assault, and the appellate court affirmed summary judgment for the institute noting that "it cannot be fathomed that the action was in furtherance of the employer's business or for the accomplishment of an objective for which he was employed," and held as a matter of law, that the assault was not in the course and scope of the doctor's employment. *Id*. In reaching this conclusion, the court distinguished situations where an assault might be in the course and scope of employment, for instance where a security guard charged with protecting an employer's property uses too much force. *Id*.

Cooper's situation is more analogous to the situation in *Buck* than to the security guard situation; assuming without conceding that Butler made any sexual or offensive physical contact with Cooper, such contact between Butler (a nurse) and Cooper (a clinical assistant) was not in furtherance of Seton's business of providing care to patients; nor would it be in furtherance of

any objective for which Butler was employed. Thus, Seton is entitled to summary judgment on Cooper's respondeat superior claim.

Cooper did not allege in her complaint that Butler was a vice principal, and therefore she has waived any argument that Seton could be held vicariously liable for Butler's alleged assaults on that theory.[4] However, even if Cooper had pled a vice-principal claim, it would fail as well. An employer can be held liable for an assault committed by a vice principal, which is an employee who is one of the following: (1) a corporate officer; (2) an employee with the authority to hire, direct, or discharge employees; (3) an employee engaged in the performance of non-delegable or absolute duties of the employer; or (4) an employee to whom the employer has confided the management of the whole business or a department of the business. *Garrett v. Great Western Distibuting Co.*, 129 S.W.3d 797, 802 (Tex. App.—Amarillo 2004, pet. denied). Butler is none of these things. H. Nguyen Aff. ¶¶ 5. Even if he were a vice principal, however, his alleged assaults can only be imputed to Seton if the vice principal's alleged tort "was encompassed within the duties assigned" to him. *Id.* The duties Butler had as a Seton nurse did not encompass any need for any physical contact with clinical assistants like Cooper.

**2. The record contains no evidence that Seton ratified any assault by Butler.**

Cooper's ratification claim fails as well; Seton did not ratify Butler's alleged assault of Cooper. To prove that a defendant ratified the acts of an agent, the plaintiff must prove (1) that the agent committed the act on behalf of the defendant, and (2) that the defendant approved of the plaintiff's act by word, act, or conduct after acquiring full knowledge of the act. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 536 -537 (Tex. 2002). The evidentiary record does not contain

---

[4] *See Direkly v. ARA Devcon, Inc.,* 866 S.W.2d 652, 655 (Tex. App. –Houston [1st Dist.] 1993, writ dismissed w.o.j.) (holding that plaintiffs who amended their petition and abandoned their vice-principal claim had waived that claim because the amended petition only contained a respondeat superior claim); *see also Garrett*, 129 S.W.3d at 802 (treating vice principal and a respondeat superior claims as distinct claims and analyzing the claims separately).

evidence that would support either element. First, assuming without conceding that Butler touched Cooper in the manner that she alleges, none of those touchings were acts on behalf of Seton. Second, there is no evidence that Seton acquired full knowledge of an assault and then approved it by word, act, or conduct. Instead, the evidence shows that Cooper did not even report the alleged assault to Seton at the time that they occurred. *See* Statement of Facts, *infra*, at § B. And when Cooper filed her EEOC charge several months later, Seton had already investigated the other plaintiffs' allegations but was unable to substantiate them. H. Nguyen Aff. ¶ 9. Moreover, by the time Cooper filed the EEOC charge, Butler had already been transferred to a different Seton facility to avoid any further contact between Butler and the other two plaintiffs. H. Nguyen Aff. ¶ 9. That simply does not equate to ratification.

**D.     Cooper's negligence claims against Seton are barred because Seton is a workers' compensation subscriber.**

Finally, Seton is also entitled to summary judgment on Cooper's various negligence claims. Under Texas law, the Workers' Compensation Act is the exclusive remedy for negligence claims by employees of workers' compensation subscribers. Tex. Lab. Code § 408.001 (West 2006); *Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex. 1985). To trigger the workers' compensation bar, a defendant must prove that (1) the employee asserting the claim was acting as an employee at the time of the alleged tort, and (2) the defendant was a workers' compensation subscriber. *See Martinez v. H.B. Zachry Co.,* 976 S.W.2d 746, 748 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The first element is not in dispute—Cooper alleges that Butler assaulted her while she was on duty at Seton. Compl. ¶ 30-33, 36, 53. It is also undisputed that that Seton is, and was at all times relevant to this lawsuit, a workers' compensation subscriber. Williams Aff. ¶ 3. Therefore, Cooper's negligence claims are barred as a matter of law.

## CONCLUSION

Because the Plaintiff Elizabeth Cooper cannot sustain her burden of proof, and for the reasons set forth above, Seton respectfully requests that this Court grant its Motion for Summary Judgment, dismiss all of Elizabeth Cooper's claims with prejudice, award Seton its costs, and grant any additional relief to which it may be justly entitled.

Respectfully submitted,

**CORNELL SMITH & MIERL, LLP**
1607 West Avenue
Austin, Texas 78701
Telephone: (512) 328-1540
Telecopy:   (512) 328-1541

Edward M. "Ted" Smith
State Bar No. 00791682
Elizabeth "Betsy" S. Chestney
State Bar No. 24038103


By: /s/ Elizabeth S. Chestney
    Elizabeth S. Chestney

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2011, I electronically filed a true and correct copy of this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| **Counsel for Plaintiffs** | **Counsel for Defendant Butler** |
|---|---|
| Kell A. Simon | Tom Nesbitt |
| ROSS LAW GROUP | DESHAZO & NESBITT L.L.P. |
| 1104 San Antonio St. | 100 Congress Ave., Suite 800 |
| Austin, Texas 78701 | Austin, TX 78701 |
| Phone: (512) 474-7677 Telephone | Phone: (512) 617-5562 |
| Fax: (512) 474-5306 Facsimile | Fax: (512) 617-5563 |
| ksimon@rosslawpc.com | tnesbitt@deshazonesbitt.com |

By:   /s/ Elizabeth S. Chestney
    Elizabeth ("Betsy") S. Chestney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSIE TAYLOR, JENNIFER NGUYEN, and ELIZABETH COOPER, | § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | CIVIL ACTION NO. 1:10-cv-650-LY |
| SETON HEALTHCARE d/b/a SETON MEDICAL CENTER WILLIAMSON and JOHN BUTLER, | § § § § § | |
| **Defendants.** | § | |

## **ORDER**

Before the Court is Defendant Seton Healthcare's Motion for Summary Judgment against Plaintiff Elizabeth Cooper [#___], filed in the above-styled cause. Upon review of the motion, the relevant law, and the entire case file, the Court now enters the following orders:

IT IS ORDERED that Defendant Seton Healthcare's Motion for Summary Judgment against Plaintiff Elizabeth Cooper [#___] is GRANTED.

SIGNED AND ENTERED this ____ day of _____, 2011.

_____
UNITED STATES DISTRICT JUDGE